The CROWN ENTERPRISES,
INC., Appellant,

v.

Jayne Ann WOODS, Commissioner of
Revenue of the State of
Tennessee, Appellee.

Supreme Court of Tennessee.

Oct. 31, 1977.

James W. Bradford, Jr., Hunter, Smith, Davis, Norris, Treadway & Hadden, Kingsport, for appellant.

David S. Weed, Asst. Atty. Gen., Nashville, for appellee; Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Judge.

This is a suit for the refund of corporate franchise taxes paid under protest for the tax years 1972 and 1973. Plaintiff, Crown Enterprises, Inc., is a Tennessee corporation engaged in the business of acquiring, developing and selling property. One aspect of plaintiff's business is the construction and development of "Crown Colony," a planned unit development (PUD) located near Kingsport.

For the years 1972 and 1973 the plaintiff-taxpayer excluded from its franchise tax base $1,406,493.83 (for 1972) and $2,432,-

683.68 (for 1973),[1] amounts representing the value of property being used during the course of construction of the residential units comprising Crown Colony. The Commissioner of Revenue determined that the amounts excluded during the years in question should have been included in the franchise tax base and, therefore, made demand for payment of additional taxes, plus interest, in the total amount of $6,577.04. Plaintiff paid this additional assessment under protest, and sued to recover the sums paid.

The trial court dismissed the taxpayer's complaint, finding that the corporate taxpayer made "actual utilization" of the properties within the meaning of T.C.A. § 67–2909 (recodified in 1976 as § 67–2908) and, therefore, was not entitled to the franchise tax exemption provided by that Section.

I

This Court has held that the corporate franchise tax is a privilege tax on the net worth or capital of the corporation. *Memphis Peabody Corp. v. MacFarland*, 211 Tenn. 384, 365 S.W.2d 40 (1962). T.C.A. § 67–2909 (recodified in 1976 as § 67–2908), the particular provision here in dispute, is as follows:

> "The measure of the tax hereby imposed shall in no case be less than the actual value of property owned, or property used in Tennessee. Provided, however, there shall not be included within the meaning hereof the value of any property while construction of same is in progress and, in addition thereto, there is no actual utilization of such property by the corporation either in whole or in part."

This provides the method for determining the minimum net worth of the capital of the corporation. *Memphis Peabody Corp. v. MacFarland, supra.* Thus, the minimum measure of the corporate franchise tax is "the actual value of the property owned, or property used in Tennessee." But, the proviso exempts from inclusion in the minimum measure the value of any property which is (1) under construction and (2) is not being utilized, in whole or in part, by the corporation. Both of these two conditions must exist before property can be excluded from the minimum measure.

The Commissioner agrees that the residential units in question were under construction, but she insists that the statutory requirement that there be "no actual utilization of such property by the corporation" has not been met under the facts presented here. She argues that since the very business of this taxpayer is to develop land into housing units it follows that corporate property that is in the process of such development is being "utilized" within the meaning of this statute.

The taxpayer, however, contends that the statute clearly and unambiguously exempts property (1) under construction and (2) not actually utilized and points out that, during the years in question, the taxpayer neither occupied, advertised, leased or otherwise derived income from the property. The taxpayer advocates as a test of "utilization" a factual determination of when the taxpayer obtains the economic value of its capital investment, pointing out that Webster's Third New International Dictionary (1965 unabridged edition) defines the word "utilize" as "[t]o make useful: turn to profitable account or use: make use of: convert to use." Taxpayer buttresses its interpretation of the phrase by the dictionary definition of "actual": "Something that is actual or exists in fact: reality: something actually received or at hand (as a cash receipt or a

---

1. Mr. James R. Bowles, the corporate secretary of Crown Enterprises, testified that the sums excluded represented the following expenditures. The discrepancy between the total sums for 1973 is not explained by the record.

| | 1972 | 1973 |
|---|---|---|
| Land | $ 488,814.21 | $ 543,949.11 |
| Land improvements (site preparation) | 318,263.94 | 604,872.33 |
| Materials inventory | 90,320.23 | 217,423.70 |
| Structures (residential units, outbuildings, recreational facilities) | 383,289.85 | 629,684.79 |
| Miscellaneous overhead (cost of master plan, depreciation of equipment, property taxes, management fees, supervisory wages) | 125,805.01 | 424,475.52 |
| | $1,406,493.84 | $2,420,405.45 |

market commodity) as distinct from estimated or expected."

Judge Learned Hand, whose wisdom has enriched most branches of jurisprudence, has said of statutory interpretation:

"* * * It does not follow that Congress meant to cover such a transaction, not even though the facts answer the dictionary definitions * * * the meaning may be more than that of the separate words as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear and which all collectively create." *Helvering v. Gregory*, 69 F.2d 809, 810–11 (2d Cir. 1934).

"It is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary, but to remember that statutes always have some purpose or object to accomplish where sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945), aff'd 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

■ Taxpayer relies upon the most frequently cited canon of construction of tax statutes, i. e., laws imposing taxes must be construed strongly against the taxing authority. See, e. g., *White v. Roden Elec. Supply Co., Inc.*, Tenn., 536 S.W.2d 346 (1976). Often an elaboration is added to this basic canon of construction that if there are doubts or ambiguities contained in the statute, they must be resolved in favor of the taxpayer.

■ When, however, the issue under consideration is whether a particular taxpayer is *exempt* from a tax, the opposite rule has developed. "Exemption provisions are most strongly construed against the person claiming the exemption." J. Hellerstein, *State & Local Taxation* 33 (1969). The claimant must clearly fall within the exemption; the courts will not grant special preferences.

■ The most fundamental rule of statutory construction, however, and the rule applied by this Court is to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute. See, e. g., *State ex rel. Rector v. Wilkes*, 222 Tenn. 384, 436 S.W.2d 425 (1968). Such intent must, of course, be derived from a reading of the statute in its entirety and within its statutory context.

## II

■ The corporate franchise tax imposed by Chapter 29 of Title 67 of Tennessee Code Annotated is a tax upon the privilege of engaging in business in the corporate form in Tennessee. *Mid-Valley Pipeline Co. v. King*, 221 Tenn. 724, 431 S.W.2d 277 (1968). *R. J. Reynolds Tobacco Co. v. Carson*, 187 Tenn. 157, 213 S.W.2d 45 (1948). It is undisputed that the plaintiff-taxpayer is a corporation engaged in the business of acquiring, developing and selling property. As such, the corporation clearly is subject to the taxing authority of the State of Tennessee.

■ In our opinion the legislature, by exempting from the minimum measure of the corporate franchise tax the value of any property under construction and not actually utilized by the corporation, intended to exclude only property which has not yet become a part of the capital employed in the particular business of the corporation. For example, manufacturing facilities while under construction and not otherwise utilized, would be exempt from the corporate franchise tax liability of a corporation whose business was manufacturing. The determination of the utilization issue depends, in large part, upon the particular nature of the business of the taxpayer.

■ A corporation that is engaged in the business of building and selling houses is *utilizing* the homes that it has under construction in conducting that business. The property represented by the homes under construction is a part of the capital employed in doing the corporate business in Tennessee and thus represents a part of the measure of the use of the corporate franchise. Accordingly, it is property includable in the minimum measure of the franchise

tax. See *People ex rel. Fifth Ave. Bldg. Co. v. Williams,* 198 N.Y. 238, 91 N.E. 638 (1910).

Accordingly, we affirm the judgment of the trial court and hold that the $6,577.04 paid under protest by the taxpayer was properly assessed by the Commissioner. Costs incurred on appeal are taxed against appellant.

COOPER, C. J., and FONES, HENRY, and HARBISON, JJ., concur.