IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 29, 2015 Session

## CENTRAL WOODWORK, INC. v. CHEYENNE JOHNSON, SHELBY COUNTY ASSESSOR OF PROPERTY

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-14-0158-2      Jim Kyle, Chancellor**

**No. W2015-00040-COA-R3-CV – Filed November 24, 2015**

Taxpayer appealed the Shelby County Assessor of Property's tax assessment regarding unreported tangible personal property and raw materials to the Tennessee State Board of Equalization. The administrative judge ruled partially in favor of taxpayer but against taxpayer regarding the raw materials. Taxpayer appealed to the State Board's Assessment Appeals Commission, and the administrative judge's ruling was upheld. Taxpayer then challenged the Appeals Commission's ruling in the chancery court. The chancery court reversed the Appeals Commission's ruling, finding that taxpayer was not a manufacturer and that its inventory should not have been assessed as raw materials. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ROGER A. PAGE, SP. J., joined.

John Barnett Turner, Jr., Assistant County Attorney, Memphis, Tennessee, for the appellant, Cheyenne Johnson, Shelby County Assessor of Property.

Jeremy G. Alpert and George Joseph Nassar, Jr., Memphis, Tennessee, for the appellee, Central Woodwork, Inc.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Mary Ellen Knack, Senior Counsel, for the appellee, State Board of Equalization.

# OPINION

## BACKGROUND

Appellee, Central Woodwork, Inc. ("Central Woodwork"), is a business formed under the laws of Tennessee and located in Shelby County, Tennessee. Central Woodwork sells doors, doorframes, hinges, casings, moldings, and other related items. A portion of Central Woodwork's business involves the sale of individual door parts, while the remaining portion involves the assembly of those parts into completed doors for sale. On February 23, 2011, Central Woodwork received two notices of back assessment/reassessment certifications for tax years 2009 and 2010 from Appellant, the Shelby County Assessor of Property ("the Assessor"). The assessment was in the total amount of $749,520. The Assessor asserted that Central Woodwork had underreported tangible personal property[1] in its personal property schedules for tax years 2009 and 2010. The assessments were based on an electronic paging system owned by Central Woodwork and the individual door parts used to assemble completed doors that the Assessor classified as raw materials.[2]

On April 21, 2011, Central Woodwork filed appeals for each of the tax years in question with the Tennessee State Board of Equalization ("the State Board"), arguing that the paging system constituted real property rather than tangible personal property and that the individual door parts were inventory excluded under Tennessee Code Annotated

---

[1]Tennessee Code Annotated section 67-5-901(a) provides for the classification of certain types of tangible personal property into categories for *ad valorem* tax assessment purposes. Additionally, Tennessee Code Annotated section 67-5-903(a) states that:

> All partnerships, corporations, other business associations not issuing stock and individuals operating for profit as a business or profession, including manufacturers, except those whose property is entirely assessable by the comptroller of the treasury, shall be furnished by the assessor not later than February 1 of each year, a schedule requiring the taxpayer to list in detail all tangible personal property owned by the taxpayer and used or held for use in such business or profession, including, but not limited to, furniture, fixtures, machinery and equipment, all raw materials, and supplies, but excluding all finished goods in the hands of the manufacturer and the inventories or merchandise held for sale or exchange, such schedule to be approved by the director of property assessments.

[2]While the property tax code does not define the term "raw materials," Tennessee State Board of Equalization Rule 0600-5-.01(8) defines "raw materials" as:

> [I]tems of tangible personal property, crude or processed, which are held or maintained by a manufacturer for use through refining, combining, or any process in production or fabrication of another item or product.

2

section 67-5-903(a) rather than raw materials. The administrative judge assigned to the appeal conducted a hearing in the Shelby County Assessor's Office on November 1, 2012, and heard arguments regarding both the paging system and door parts. On January 17, 2013, the administrative judge issued an Initial Decision and Order ruling in favor of Central Woodwork as to the classification of the paging system but against Central Woodwork as to the classification of the door parts, finding that the door parts awaiting assembly were raw materials.

Central Woodwork then filed an appeal of the administrative judge's Initial Decision and Order with the Tennessee Assessment Appeals Commission ("the Appeals Commission"), a subsidiary board appointed by the State Board for intermediate review. The Appeals Commission conducted a hearing on August 21, 2013, as part of its review of the administrative judge's ruling, where Central Woodwork argued that it was not a manufacturer and that its assembly of doors for the convenience of its customers did not rise to the level of creating another product. The Appeals Commission was unable to reach a decision due to a two-to-two deadlock vote by its four panel members. By rule, the Initial Decision and Order of the administrative judge became the final order of the Appeals Commission due to a lack of votes to overturn it. Central Woodwork sought reconsideration by the Appeals Commission or review by the State Board but was denied.

Central Woodwork next sought judicial review of the Appeals Commission's final order in the chancery court. During the hearing in the chancery court, Central Woodwork reiterated that it merely assembled doors from pre-manufactured parts for its customers as a convenience at no extra cost. Further, Central Woodwork maintained that it was not a manufacturer, did not do any of the millwork associated with any of the parts, and likened its process to a father putting together a dollhouse on Christmas Eve. The Assessor argued that Central Woodwork's Christmas Eve analogy was flawed because forty-five percent of Central Woodwork's business involved the assembly of doors for sale using approximately a million dollars' worth of equipment used to assist in the assembly of doors. The chancery court overturned the Final Decision and Order of the Appeals Commission, finding that the "doors, frames, hinges and related materials in question . . . are finished goods inventory rather than raw materials inventory and Central Woodwork is not a manufacturer." The chancery court's order stated that the basis for the court's decision was that the materials did not change character when assembled and that Central Woodwork's assembly of the parts did not "create a visibly distinct article of commerce." The Assessor timely appealed.

ISSUE

The Assessor presents one issue for review, which we restate as follows: Whether the trial court erred in determining that the component parts used by Central Woodwork

in door frame assemblies were inventory rather than raw materials.

## STANDARD OF REVIEW

Our review is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure, which state that we are to review the trial court's findings of fact *de novo* upon the record, with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Richardson v. Tenn. Assessment Appeals Comm'n*, 828 S.W.2d 403, 407 (Tenn. Ct. App. 1991). There is no presumption of correctness attached to the trial court's conclusions of law. *Richardson*, 828 S.W.2d at 407 (citing *Adams v. Dean Roofing Co.*, 715 S.W.2d 341, 343 (Tenn. App. Ct. 1986)). The proper interpretation of a statute is an issue of law. Accordingly, we review the trial court's interpretation of a statute *de novo* with no presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011); *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012).

Our primary objective when construing a statute is to effectuate the purpose of the legislature. *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). The Tennessee Supreme Court has outlined the applicable principles that apply to the question of statutory interpretation:

> When dealing with statutory interpretation…our primary objective is to carry out the legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006).

*Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011). With these principles in mind, we turn to the substance of the appeal.

## ANALYSIS

This appeal requires us to construe the provisions of the property tax statutes as codified at Tennessee Code Annotated sections 67-5-101, *et seq.*, and section 903 of the chapter in particular. Specific canons of construction exist when interpreting tax statutes.

*See Crown Enters., Inc. v. Woods*, 557 S.W.2d 491, 493 (Tenn. 1977). First, "laws imposing taxes must be construed strongly against the taxing authority." *Id.* Where there are doubts and ambiguities contained in the statute, they must be resolved in favor of the taxpayer. *Id.* The opposite rule has developed, however, when "the issue under consideration is whether a particular taxpayer is exempt from a tax." *Id.* Exemption provisions are construed strongly against the person claiming the exemption. *Id.* (citing J. Hellerstein, State & Local Taxation 33 (1969)).

Here, Central Woodwork was assessed taxes on unreported raw materials, specifically door parts, for the tax years 2009 and 2010 pursuant to Tennessee Code Annotated section 67-5-903(a). In pertinent part, this section reads:

> (a) All partnerships, corporations, [and] other business associations…shall be furnished by the assessor…a schedule requiring the taxpayer to list in detail all tangible personal property owned by the taxpayer and used or held for such business or profession, including, but not limited to, furniture, fixtures, machinery and equipment, *all raw materials*, supplies, *but excluding all finished goods* in the hands of the manufacturer *and the inventories of merchandise held for sale or exchange*[.]

Tenn. Code Ann. § 67-5-903(a)(emphasis added). The Assessor argues that the door parts used in the assembly of doors are raw materials subject to tax under Section 67-5-903(a), while Central Woodwork argues that the door parts are inventory "held for sale or exchange." The tax code does not provide a definition of "raw materials," but the State Board defines raw materials as

> items of tangible personal property, crude or processed, which are held or maintained *by a manufacturer* for use through refining, combining, or any process in production or fabrication of another item or product.

Tenn. Comp. R. & Regs. 0600-5-.01(8)(emphasis added). By definition, then, items of tangible personal property may only be assessed as raw materials if they are held by a manufacturer. Accordingly, this case hinges on whether Central Woodwork is a manufacturer for the purpose of personal property taxes.

The Assessor argues that the rule's inclusion of "processed" items demonstrates that it is unimportant whether Central Woodwork performed any of the milling operations on its door parts. Rather, the Assessor argues that the determinative factor is whether Central Woodwork combined those items into another product. The Assessor cites the State Board's ruling in *Economy Pencil Company, Inc.* to support its argument that the assembly of component parts into a useful whole constitutes manufacturing. In *Economy*

*Pencil*, the State Board was tasked with determining whether certain component parts used to assemble pens and pencils were properly assessed to the taxpayer as raw materials. *Economy Pencil Company, Inc.* (Tenn. SBOE 2008). The State Board determined that Economy Pencil was "engaged in manufacturing at least to the extent that the company assemble[d] those items which are received as component parts." *Id.* A significant portion of the analysis in *Economy Pencil* centered on whether the bulk of the company's business, which involved stamping corporate logos on pens and pencils, constituted manufacturing. The State Board determined that it did, finding that the stamping process unmistakably altered "the appearance of the products in such a way as to enhance their economic utility and value to the ultimate consumers." *Id*.

While we recognize that administrative regulations and interpretations are not controlling, *see Carr v. Chrysler Credit Corp.*, 541 S.W.2d 152, 156 (Tenn. 1976), "a state agency's interpretation of a statute that the agency is charged to enforce is entitled to great weight in determining legislative intent." *Consumer Advocate Div. v. Greer*, 967 S.W.2d 759, 761 (Tenn. 1998)(citing *Nashville Mobilphone Co. v. Atkins*, 536 S.W.2d 335, 340 (Tenn. 1976)). With those principles in mind, we consider the application of *Economy Pencil* to the instant case. First, the facts of this case are distinguishable from *Economy Pencil.* Economy Pencil was exempt from the Business Tax Act, codified at Tennessee Code Annotated section 67-4-701 *et seq.*, as a "manufacturer." The State Board in that case expressed concern that declaring Economy Pencil's component parts "inventory" would "lead to an anomalous result that the property in question would generate neither gross receipts nor ad valorem taxes." *Economy Pencil Company*, *Inc.* at 4 (Tenn. SBOE 2008). Here, Central Woodwork is subject to a gross receipts tax on all its sales and is not for any other taxation purposes considered a manufacturer. Additionally, while Economy Pencil occasionally sold products to its customers in the same state it received them from another manufacturer, such sales accounted for less than ten percent of its total annual volume. *Id.* at 2. In contrast, approximately 55% of Central Woodwork's sales involve products that go out of the business in the exact same form and configuration they came in. There is also no indication that Economy Pencil sold individual pen components; rather, the entire purpose of acquiring the components was for assembly into completed pens for sale. Central Woodwork primarily sells individual components and only assembles those components into a completed door upon request.

We conclude the State Board's decision in *Kele, Inc.* is more analogous to the facts of the case at bar. In *Kele,* the State Board analyzed whether a company's practice of connecting valves and actuators, which it typically sold individually, upon customer request amounted to manufacturing. *Kele, Inc.* (Tenn. SBOE 2011). The State Board determined that it did not and that the component parts were therefore not raw materials for the purpose of the personal property tax. *Id.* at 4. As in *Kele*, Central Woodwork

6

primarily sells its components separately but will assemble them upon request at no additional charge to the customer. Central Woodwork's business model, like Kele's, primarily involves the distribution of products, as opposed to combining or altering virtually everything they sell.

While there is no statutory definition of a "manufacturer" for purposes of the personal property tax, other sections of Title 67 do offer some clarification of what makes a business a "manufacturer" for other purposes. Statutes "'in pari materia,' those relating to the same subject or having a common purpose, are to be construed together." *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994). The construction of one such statute, if doubtful, "may be aided by considering the words and legislative intent indicated by the language of another statute." *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn. 1994). For example, Tennessee Code Annotated section 67-6-206(b)(1) provides for reduced sales tax rates with respect to water, gas, electricity, fuel oil, coal, and other energy sources when sold to or used by manufacturers. Tenn. Code Ann. § 67-6-206(b)(1). In that context, "manufacturer" is defined as "one whose *principal business* is fabricating or processing tangible personal property for resale." Tenn. Code Ann. § 67-6-206(b)(2)(emphasis added). The Tennessee Supreme Court has interpreted "principal business" with regard to that particular statute to mean at least 51% of a taxpayer's revenues. *See Beare Co. v. Tenn. Dep't of Revenue*, 858 S.W.2d 906, 908 (Tenn. 1993)(citing *Tenn. Farmers Coop. v. State*, 736 S.W.2d 87, 91-92 (Tenn. 1987)). Additionally, Tennessee Code Annotated section 67-4-2121, part of the Franchise Tax Law of 1999, also defines "manufacturer" as "any person whose *principal business* is fabricating or processing tangible personal property for resale…." Tenn. Code Ann. § 67-4-2121(b)(emphasis added). These statutory definitions demonstrate the legislature's intent to require more than just any act of manufacturing in order to be considered a "manufacturer" for tax purposes.

By admission of both parties, only forty-five percent of Central Woodwork's sales involve the assembly of component door parts into completed doors. The remaining fifty-five percent of sales are of the individual component parts. Using either the logic of the State Board's previous rulings or the analysis set forth by our supreme court in *Beare Company,* Central Woodwork does not appear to be a "manufacturer." We hold, therefore, that Central Woodwork is not a manufacturer, and the component door parts used in the assembly of completed doors are not raw materials under the meaning of Tennessee Code Annotated section 67-5-903(a) and Tenn. Comp. R. & Regs. 0600-5-.01(8). Finding no error with the chancery court's decision, we affirm.

## CONCLUSION

For these reasons, we affirm the order of the chancery court. Costs of this appeal

are taxed to the appellant, Cheyenne Johnson, Shelby County Assessor of Property and her surety, for which execution may issue, if necessary.

_____
BRANDON O. GIBSON, JUDGE